NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0275n.06

Case No. 22-3992

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| ADMIRAL INSURANCE COMPANY, | ) | FILED |
| Plaintiff-Appellant, | ) ) | Jun 13, 2023 |
|  | ) | DEBORAH S. HUNT, Clerk |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR |
|  | ) | THE NORTHERN DISTRICT OF |
| FIRE-DEX, LLC, | ) | OHIO |
| Defendant-Appellee. | ) |  |
|  | ) | OPINION |

Before: COLE, READLER, and DAVIS, Circuit Judges.

**CHAD A. READLER, Circuit Judge.** Fire-Dex is a manufacturer of firefighting materials. Today, the company finds itself fighting fires of another sort—claims in an array of lawsuits asserting that Fire-Dex's products contain chemicals that purportedly caused cancer in firefighters and their spouses. Fire-Dex turned to one of its long-time liability insurers, Admiral, for defense or indemnity in these lawsuits. Admiral denied coverage and, in turn, sought a declaratory judgment that it had properly done so. The district court declined to exercise jurisdiction over the suit, giving rise to this appeal. We now affirm.

I.

This insurance dispute is a small part of a developing national story. For many years, the group of chemicals called per- and polyfluoroalkyl substances (also known as "PFAS") has been used in the manufacturing of firefighting products. In more recent days, PFAS has been linked to

certain kinds of cancer. Those discoveries resulted in numerous lawsuits against PFAS manufacturers as well as those companies whose finished products allegedly contained PFAS. Many of the cases have been consolidated in multidistrict litigation. *See In re Aqueous Film-Forming Foams Prod. Liab. Litig.* ("PFAS MDL"), No. 2:18-mn-02873 (D.S.C.).

Fire-Dex manufactures clothing worn by firefighters. A host of lawsuits allege injuries—primarily cancer—resulting from Fire-Dex clothing that contained PFAS. The plaintiffs in those cases are firefighters or their spouses who claim exposure to PFAS through the use of Fire-Dex's products in "the usual and normal course of performing their firefighting duties." Several of those cases have also been referred to the PFAS MDL for resolution.

As the claims against it mounted, Fire-Dex sought coverage from its commercial general liability insurers, including under general liability policies issued by Admiral. But Admiral denied coverage. As the insurer saw things, exclusions in the policy caused Fire-Dex's lawsuits to fall beyond the scope of coverage provided by the policy. In reaching that conclusion, Admiral principally relied on the so-called "occupational disease" exclusion policy rider. That exclusion reads: "[T]here is no coverage afforded . . . for any bodily injury to any individual resulting from any occupational . . . disease arising out of any insured's operations, completed operations or products." (emphasis and quotation marks removed). Admiral deemed the firefighters' and their spouses' illnesses resulting from alleged exposure to PFAS to be an "occupational disease" captured by the exclusion. In addition to denying coverage, Admiral filed this declaratory judgment action. Admiral seeks a declaration under the Declaratory Judgment Act, *see* 28 U.S.C. § 2201(a), that it has no duty to defend or indemnify Fire-Dex in the underlying lawsuits.

The district court declined to exercise jurisdiction over Admiral's complaint. Utilizing our test for the appropriateness of a declaratory judgment, the district court held that there were

Case No. 22-3992, *Admiral Ins. Co. v. Fire-Dex, LLC*

important federalism concerns weighing against a federal court issuing a declaration in this setting. Admiral timely appealed, making the case ripe for our resolution.

II.

Congress, in the Declaratory Judgment Act, authorized federal courts to "declare the rights and other legal relations" of parties. *Id.* As is always true in federal litigation, the plaintiff in a declaratory judgment suit must satisfy the traditional elements of a federal action. That includes demonstrating that a live case or controversy exists. *MedImmune, Inc. v. Genentech, Inc*., 549 U.S. 118, 126–27 (2007). Even when a plaintiff has done so, the district court maintains discretion whether to accept jurisdiction over the action. 28 U.S.C. § 2201(a); *Wilton v. Seven Falls Co*., 515 U.S. 277, 282 (1995).

The discretionary aspect of jurisdiction under the Declaratory Judgment Act is at the heart of this dispute. The district court declined to exercise jurisdiction because Admiral's claim raises novel questions of Ohio insurance law, questions a state court is better positioned to answer in the first instance. Admiral believes that this conclusion amounts to reversible error.

In most respects, the legal framework for determining when a district court should exercise jurisdiction over a declaratory judgment suit is well settled. That framework, derived from our decision in *Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984), is colloquially known as the "*Grand Trunk*" factors. The first four factors ask whether a declaration would settle the controversy, serve a useful purpose in clarifying the legal relations in issue, be used merely for the purpose of "procedural fencing," and/or improperly encroach upon state jurisdiction; the fifth asks whether there is a better alternative remedy. *Id.* Despite the formula's long pedigree, we have "never indicated" with specificity "how the[] *Grand Trunk* factors should be balanced" by the district court. *Cardinal Health, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*,

3

Case No. 22-3992, *Admiral Ins. Co. v. Fire-Dex, LLC*

29 F.4th 792, 801 (6th Cir. 2022) (quoting *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 563 (6th Cir. 2008)).  As a result, "the relative weight of the underlying considerations of efficiency, fairness, and federalism will depend," as they typically do, "on [the] facts of the case." *Id.* (quoting *W. World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014)).

More settled is our practice of reviewing the district court's application of the *Grand Trunk* factors for an abuse of discretion.  *United Specialty Ins. Co. v. Cole's Place, Inc.,* 936 F.3d 386, 395 (6th Cir. 2019); *see also Wilton*, 515 U.S. at 286 (recognizing that the district court has "unique and substantial discretion in deciding whether to declare the rights of litigants").  In undertaking that review, we customarily do not perform a microscopic examination of the district court's decision, scrutinizing its conclusion factor by factor.  *Compare Cardinal Health,* 29 F.4th at 798 n.2 (concluding there was no abuse of discretion for failure to elucidate all of the elements within the *Grand Trunk* test), *with Byler v. Air Methods Corp.*, 823 F. App'x 356, 365 (6th Cir. 2020) (reversing when a court completely "disregard[ed]the *Grand Trunk* factors").  It is enough that the district court has "taken a good look at the issue and engaged in a reasoned analysis of whether issuing a declaration would be useful and fair." *Cardinal Health,* 29 F.4th at 797 (citation omitted).

Starting from common ground, there is no dispute over the district court's application of the first three *Grand Trunk* factors.  As the district court explained, a declaration would both settle the controversy and be useful in clarifying the legal relations between the parties.  Likewise, the court found no evidence of procedural fencing or other gamesmanship.

Next is the fourth factor:  state jurisdictional encroachment.  And that is where the parties' agreement ends.  Turning there, Admiral's suit would encroach upon state jurisdiction (in this case, Ohio's) if "accepting [federal] jurisdiction would increase friction between federal and [Ohio] courts." *Flowers*, 513 F.3d at 559.  Here, we answer one multi-factor test with another.  We apply

4

Case No. 22-3992, *Admiral Ins. Co. v. Fire-Dex, LLC*

three sub-factors to assess the risk that hearing the case will lead to friction between state and federal courts. Those factors include whether: (1) the underlying factual issues are important to an informed resolution of the case; (2) a state trial court is in a better position to evaluate those issues than a federal court; and (3) there is a close nexus between the underlying issues and state law or public policy. *Travelers Indem. Co. v. Bowling Green Prof'l Assocs*., 495 F.3d 266, 271 (6th Cir. 2007).

The district court concluded that all three sub-factors weighed against jurisdiction. Critical to the court's assessment was that Ohio courts have yet to answer questions tied to insurance liability for PFAS manufacturing, and accordingly, that those matters are best resolved by an Ohio court in the first instance. *See* R. 21 PageID 599 ("[A]fter an exhaustive search, the Court was unable to locate a single case (and the parties did not identify any case) in which an Ohio state court . . . applied [this exclusion] to the facts presented in the instant case.").

We agree. This dispute turns on a novel issue of Ohio insurance law: are illnesses arising from exposure to PFAS in a manufacturer's finished products an "occupational disease" under Ohio law? No party cites an Ohio decision addressing the issue, nor are we aware of one. In the absence of guidance from Ohio courts for us to follow, Admiral's "theories of liability under Ohio state law implicate concerns of comity." *Cardinal Health*, 29 F.4th at 799. States, it bears reminding, are the masters of their own law, subject to certain federal constitutional and statutory restraints. *See Montana v. Wyoming*, 563 U.S. 368, 377 n.5 (2011) (quoting *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 236 (1940) ("The highest court of each State, of course, remains 'the final arbiter of what is state law.'")). So when unanswered questions of state law raise their heads, state courts are best suited to answer them, a proposition that has long been embraced in a host of settings. *See, e.g.*, *R.R. Comm'n of Tex. v. Pullman Co*., 312 U.S. 496, 500–502 (1941)

Case No. 22-3992, *Admiral Ins. Co. v. Fire-Dex, LLC*

(instructing federal courts to avoid exercising jurisdiction where an interpretation by a state court will abrogate the need for a constitutional decision in federal court); *see also Younger v. Harris*, 401 U.S. 37, 45, 52–53 (1971) (cautioning federal courts against exercising jurisdiction in cases where they are asked to enjoin pending state proceedings). The more novel the issue, the less guidance federal courts will have in interpreting state law. *See Hoey*, 773 F.3d at 760 ("A district court would be wise to decline jurisdiction if a declaratory action involved novel, unsettled, or complex issues of state law. . . ."). And the lesser the guidance, the greater the likelihood that a federal court's conclusion would be out of step with a state court's resolution of the issue. Remember, the district court was asked to "declare" how Ohio law would interpret contractual language addressing liability to non-employees for PFAS exposure. Doing so without any relevant state-imposed guardrails would make its journey a riskier one. For these reasons, it was "not an abuse of discretion for [the] district court to hold" that these issues "first need to be decided by Ohio state courts." *Cardinal Health*, 29 F.4th at 799.

Especially so, we note, as this case involves a dispute over insurance law. By and large, insurance rules and regulations are reserved to the states for crafting. *See, e.g.*, McCarran-Ferguson Act, 15 U.S.C. § 1012(b) ("No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance[.]"); *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 815 (6th Cir. 2004) (explaining that "state courts are best situated" to regulate insurance companies operating within their borders, including by interpreting insurance contracts) (citation omitted). It is thus no surprise that we consistently counsel district courts to decline jurisdiction when asked to decide unresolved insurance coverage issues. *See Bituminous*, 373 F.3d at 816 (noting that "potential unresolved questions of state law concerning state regulated insurance contracts . . . weigh[]

against exercising jurisdiction."); *see also Mass. Bay Ins. Co. v. Christian Funeral Dirs., Inc.*, 759 F. App'x 431, 440 (6th Cir. 2018) ("In general, states are in a better position to resolve insurance issues governed by state law."). All things considered, the district court did not abuse its discretion in determining it was best left for a state court to resolve in the first instance the novel state insurance law questions presented here. For many of the same reasons, the district court did not err in weighing the fifth factor against exercising jurisdiction. It was right to conclude that an Ohio declaratory judgment action was a better alternative remedy.

Admiral has not convinced us otherwise. To begin, Admiral emphasizes that no pending state court litigation raises the same issues as those presented here. But ongoing litigation is not necessary for a federal court to decline jurisdiction asserted in a declaratory judgment suit. Instructive on that front is our recent decision in *Cardinal Health*. Cardinal, a leading pharmaceutical distributor, was sued in one of many cases that made up multidistrict litigation surrounding opioids. *Cardinal Health*, 29 F.4th at 795–97. Like Admiral, Cardinal's insurer declined liability coverage and sought a declaratory judgment that its coverage interpretation was correct as a matter of law. *Id.* On appeal, we affirmed the district court's decision to decline jurisdiction over the declaratory action. *Id.* In so doing, we rejected the notion that state-federal friction could only arise where there existed a parallel state proceeding. Rather, we explained, comity is "not so narrow." *Id.* at 799.

Admiral likewise takes issue with our understanding of Ohio law. Where we see untouched legal terrain, Admiral sees a well-worn path. An Ohio court, the insurer says, would predictably apply Ohio precedent interpreting the "occupational disease" exclusion to answer today's insurance law questions. To the extent that body of law is well settled, however, it is only in the context of worker's compensation claims—where workers allege they were exposed to a disease

7

Case No. 22-3992, *Admiral Ins. Co. v. Fire-Dex, LLC*

on the job.  *See, e.g.*, *State ex rel. Ohio Bell Tel. Co. v. Krise*, 327 N.E.2d 756, 760–61 (Ohio 1975); *City of Bedford Hts. v. France*, 616 N.E.2d 177, 179 (Ohio 1993).  That is not the nature of the various pending lawsuits against Fire-Dex.  The company, remember, is being sued by end users of Fire-Dex products, not its own employees, for workplace exposure.  And like the district court, we are aware of no Ohio precedent interpreting the term "occupational disease" in that scenario.  Nor, it seems, is Admiral.  *See* Admiral Br. at 25 ("[T]his particular occupational disease exclusion has not been applied in Ohio. . . .").

* * *

We affirm the judgment of the district court.